UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DAVID ERWIN, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 3:16-CV-00105 |
| v. | § § | JURY TRIAL DEMANDED |
| APPLUS VELOSI AMERICA, LLC, | § § § | |
| Defendant. | § | |

**JOINT MOTION FOR SETTLEMENT APPROVAL**

Lead Plaintiff David Erwin, individually and on behalf of all others similarly situated (hereafter "Plaintiffs"), and Defendant Applus Velosi ("Defendant") have reached a settlement of this lawsuit. Plaintiffs and Defendant (together, the "Parties") respectfully move this Court for approval of the Settlement memorialized in the Settlement Agreement attached as Exhibit A (the "Settlement"). The proposed Settlement represents a fair and reasonable resolution of a bona fide dispute and was the product of arms-length negotiations by experienced counsel after a full-day mediation on March 7, 2018. The Settlement will provide monetary compensation to all Plaintiffs and eliminate the risks both sides would bear should this litigation continue. Therefore, the Parties respectfully request that the Court approve the Settlement and dismiss the case with prejudice.

**I.  Procedural History.**

The Parties have spent considerable time litigating this case to its current resolution. Plaintiffs filed this case on April 21, 2016 asserting collective action claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), arising from Defendant's alleged failure to pay overtime compensation to inspectors for hours worked more than forty per workweek. (Dkt. No. 1). The Parties' Joint Stipulation for Conditional Certification and Notice was signed by the Court

on April 24, 2017. (*See* Dkt. No. 20). On February 27, 2017, the Court granted Plaintiff's Motion for Notice by Electronic Mail, and notice by electronic mail was sent out shortly after. (*See* Dkt. No. 34). The FLSA notice was sent to a conditionally certified class of current and former inspectors, 22 of whom filed consents to join the litigation.[1]

Plaintiff propounded written discovery on Defendant. In response, Defendant produced hundreds of pages of payroll documents and employment manuals. Defendant provided Plaintiff with an estimation of the amount of overtime owed to Plaintiffs. Plaintiff likewise performed his own calculations regarding the potential damages under an alternative theory of liability.

The Parties prepared for and engaged in formal mediation, which involved a full-day mediation conference with Richard Brann, Esq., a well-respected mediator familiar with wage-and-hour issues and complex class-action litigation. Lead Plaintiff David Erwin attended the mediation in person on behalf of the Plaintiffs. Defendant had two corporate representatives in attendance. Attorneys Galvin Kennedy and Carl Fitz attended on behalf of Plaintiffs, and attorney M. Carter Crow attended on behalf of Defendant. The mediation covered all pending claims filed by Plaintiffs against Defendant, and the Parties ultimately reached the Settlement addressed here.

Plaintiffs and their counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in this litigation. After balancing the costs, risks, and delay of continued litigation against the benefits of settlement, Plaintiffs and their counsel believe that the Settlement is in the best interests of the Class and represents a fair resolution of the claims brought in this litigation.

**II.     Legal Standard.**

---

[1] Five of the Plaintiffs have since withdrawn their consent forms from the case due to having no FLSA violations within their respective statutes of limitations. *See* Dkt. 39.

The Parties seek approval of a settlement under section 216(b) of the FLSA. This matter does not relate to settlement of a "class action" under Rule 23. Consequently, the settlement affects only the individuals who have affirmatively opted into the case and who retained Plaintiffs' counsel to pursue their FLSA claims. The Settlement does not affect the rights of any non-parties. The Court's role in approving an FLSA settlement is to ensure that the "employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008). When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982).

The endorsement of a proposed FLSA settlement by both parties is a "factor that weighs in favor of approval" of an FLSA settlement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2008). In fact, "[b]ecause the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see also, In re BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court [] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

**III.   Summary of Settlement.**

The following summarizes the Settlement Agreement's terms:

### A.      **The Settlement Class.**

The FLSA Class includes 18 individuals who filed consents to join the lawsuit and who worked for Defendants within the three (3) years prior to filing such consents, as identified on Exhibit A to the Settlement Agreement.

### B.      **Payments to Class Members.**

Defendant has agreed to establish a Settlement Fund of $225,000 to resolve the wage and hour claims of all Class Members. Under the Settlement, each Plaintiff will receive an amount from the Settlement fund that is based upon each Plaintiff's proportionate share of the total damages paid. That is, hypothetically, if a Plaintiff is owed $2,000 and the total amount paid to the class is $100,000, his proportionate share of the Settlement is two percent (2%) and he will receive that percentage of the Settlement fund after fees and costs have been deducted. The pro rata calculation is based on a detailed formula which accounts for the amount of overtime that each Class Member would have received had they been classified as an employee, rather than an independent contractor. The pro rata allocations to Plaintiffs are set forth on Exhibit B to the Settlement Agreement.

The Settlement Agreement also sets forth that fifty percent (50%) of all payments constitute wages, subject to reporting on W-2 deductions for payroll taxes. Defendant will be responsible for the employer portion of all such payroll taxes and withholdings. The Parties further agree that the remaining fifty percent (50%) constitutes payments for liquidated damages and/or other consideration for each Plaintiff's release and will be reported on IRS Form 1099.

### C.      **Incentive Payments.**

The Settlement Agreement contemplates a modest incentive payment of $2,500 to lead Plaintiff David Erwin to acknowledge his service to the class. This payment would be in addition to any Settlement Payment that Mr. Erwin receives in his individual capacity as a claimant in this matter. Considering his efforts in bringing and maintaining the action, and in negotiating this settlement on behalf of the Class Members, Plaintiff Erwin is entitled to the incentive payment sought. *See McClain v. Lufkin Ind., Inc.*, No. 9:97CV63, 2009 U.S. Dist. LEXIS 125630 at *11-15, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009) (summarizing case law approving incentive awards to named plaintiffs and describing the standards therefor).

Mr. Erwin was instrumental in identifying the alleged wage violations, the facts pertinent to inspectors' day-to-day working conditions (such as job duties and working conditions of inspectors, the pay practices that Defendant used to compensate Plaintiffs, and Defendant's per diem method of expense reimbursement, to name a few), and assisted with building the case. The modest incentive award is reasonable given the time he spent providing valuable insight into the development of the case, and the results he helped obtain for the class members. Furthermore, the settlement agreement calls for Mr. Erwin to sign general releases waiving all possible causes of action against the Defendant, whereas the opt-in Plaintiffs are only required to sign a limited release that applies to wage and hour claims.

### D.   Settlement Administration.

The Parties have agreed to self-administer this settlement. Under the settlement agreement, 30 days after Court approval of this agreement, Defendant will deliver checks made out to each Plaintiff for their respective net settlement amounts. Defendant will mail these checks directly to each Plaintiff, and the checks will be valid for 120 days. Plaintiffs' counsel will perform a skip

5

trace of any checks that are returned as undeliverable and make all reasonable efforts to locate the correct address for that Plaintiff.

### E. Attorneys' Fees and Costs

The Settlement Agreement provides that Class Counsel will move the Court for an award of attorneys' fees and costs. Under the Settlement Agreement, Class Counsel will seek attorneys' fees not to exceed thirty-three and one-third percent (33.3%) of the Settlement Fund plus reimbursement of costs. Defendants do not object to Class Counsel's request for fees and costs.

Plaintiff executed a contingency fee agreement to pay counsel 33.3% of the gross recovery plus costs. The 33.3% contingency is within the normal range for contingency fee awards. *See Barbara v. AmSpec, L.L.C.*, No. 3:14-cv-226 (S.D. Tex., Oct. 19 2016), Doc. 141 (Hanks, J.) (approving 40% contingency fee in an FLSA collective action settlement); *Green-Johnson v. Fircroft, et al.*, No. Civ. A. 4:12-cv-01307 (S.D. Tex., April 3, 2013), Doc. 50 (approving 40% contingency fee in an FLSA collective action); *Hanson et al v. Camin Cargo Control, Inc.*, No. Civ. A. 4:13-cv-00027 (S.D. Tex. 2015), Doc. 116 (approving 40% contingency fee in an FLSA collective action); *Villarreal, et al. v. Source Refrigeration & HVAC, Inc.*; No. Civ. A. 1:12-cv-00243 (W.D. Tex. October 8, 2013), Doc. 71 (approving 40% contingency fee in FLSA collective action); *Covey, et al. v. Iron Cactus, et al.*; No. Civ. A. 1:12-cv-00111-SS (W.D. Tex. August 6, 2013) (same); *Barnard et al v. Intertek USA Inc.*, No. Civ. A. 4:11-cv-02198 (S.D. Tex., Jan. 8, 2014), Doc. 184 (same).

Of the total $3,428.66 in expenses, $400 was incurred to cover filing fees, $1,397.88 was paid to CPT Group, Inc. to cover the mailing of notice and consent forms, $250 covered general administrative expenses, $900 was incurred to hire a top tier mediator, and the remainder covered other general litigation costs such as legal research expenses, certified mail, and large copy jobs.

Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would have not understood the nuanced arguments asserted, nor would have been able to discern whether the Plaintiffs even had viable claims. Additionally, other lawyers may not have had the expertise to calculate the damages on behalf of the Plaintiffs in this case. Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Class.

Ultimately, the attorneys' fees requested by Plaintiff's Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. Had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Plaintiffs were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here.

**IV.    SETTLEMENT APPROVAL.**

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (noting "strong judicial policy favoring settlements" and "realization that compromise is the essence of settlement"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); 2 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992) (collecting cases).

The proposed Settlement is the best vehicle for Plaintiffs to receive the relief they seek in a prompt and efficient manner.

For FLSA claims, a court should approve a settlement that is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States, U.S. Dep't. of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982). If a settlement in an FLSA suit does reflect such "a reasonable compromise over issues," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

A bona fide dispute exists between the parties. Plaintiff alleged that Defendant violated the FLSA because Defendant failed to compensate Plaintiffs with overtime at one-and-one-half their regular rate of pay for all hours worked over forty (40) in a workweek. Specifically, Plaintiffs alleged that Defendants misclassified Plaintiffs as independent contractors, and failed to pay them overtime as required by the FLSA. Additionally, Plaintiffs alleged that Defendants violation of the FLSA was willful, and a three-year state of limitations should apply as a result. Defendant denied Plaintiffs' allegations and argued that it correctly classified Plaintiffs as independent contractors under the FLSA. Defendant also maintained that even if their policy violated the FLSA, any possible violation was perpetrated in good faith, and was not willful, thereby limiting any possible recovery to a two-year statute of limitations without liquidated damages. Defendant also maintained the position that individualized differences existed among the collective members such that the class should be decertified.

The Parties disagree about the merits of Plaintiff's claims, the viability of Defendant's defenses, the propriety of proceeding through trial on a collective basis, and the proper calculation of damages. On liability, Defendant takes issue with Plaintiffs' theory that the Plaintiffs were misclassified as independent contractors, and therefore should have received overtime pay.

Additionally, Defendant disputes Plaintiffs' claims that any alleged violations of the FLSA were willful.

If Plaintiff's allegations were ultimately correct, Defendant would be faced with the prospect of a monetary judgment in favor of Plaintiffs, as well as an obligation to pay attorneys' fees and costs incurred by Plaintiffs. If Defendant's arguments were correct, then Plaintiffs would face decertification or no recovery. Substantial obstacles exist if litigation continues, and the Settlement offers substantial and immediate relief.

The Parties on both sides were represented by able counsel throughout this litigation. Each side aggressively litigated its positions. The Settlement eliminates the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Such negotiations allowed the Parties to bridge the significant gap between the Parties' settlement positions and obtain the resolution described. Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores, Inc*., 679 F.2d at 1354 (recognizing Courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness). Accordingly, the Court should readily conclude that a bona fide dispute exists between the Parties and approve the Settlement.

The Settlement Agreement is also fair because it calls for a substantial payment, and provides closure for all Parties upon Court approval. The Parties have agreed to base the distribution of the settlement funds on each Plaintiff's damages as calculated down to the penny based on Defendant's payroll records.  The Parties have agreed that an objective formula will be used to calculate the proportionate amount of the lump sum settlement that each class member will receive. All Plaintiffs will receive their proportionate share of the settlement based on the hours they worked using the exact same formula.

The time and cost of further litigation in this case also favors settlement. This case is now over two years old and, with continued litigation, discovery, motion practice, and appeals, could easily last several more years. Indeed, absent this Settlement, the Parties would continue, as they have throughout, to vigorously litigate the case.

The amount of litigation and discovery conducted prior to settlement being reached favors a finding that the Settlement is fair. In addition to analyzing the pay data for all Plaintiffs, Class Counsel collected data from the 18 Plaintiffs regarding their particular work experience with Defendant. The Parties also undertook the time and expense of electronic discovery and expert services. In sum, this action reached a negotiated resolution after two years of litigation involving extensive research, analysis of payroll data for 18 plaintiffs, and a large amount of electronic discovery. In the event that one side or the other appeals a trial court judgment, the risk, uncertainty, and cost of continued litigation would increase dramatically. The Settlement, by contrast, provides immediate, concrete relief to all Plaintiffs.

## CONCLUSION

The terms of the settlement have been approved by Plaintiffs, their counsel, Defendant, and Defendants' counsel. The settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, Plaintiffs request that the Court approve the FLSA settlement.

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order approving the Parties' Settlement Agreement. A proposed order is attached for the Court's consideration.

Dated:  May 23, 2018                                              Respectfully submitted,

| | |
|---|---|
| */s/ Galvin B. Kennedy* | */s/ M. Carter Crow* |
| Galvin B. Kennedy | M. Carter Crow |
| Texas State Bar No. 00796870 | Texas State Bar No. 05156500 |
| Federal Bar No. 20791 | Federal Bar No. 15048 |
| KENNEDY HODGES, L.L.P. | Norton Rose Fulbright US LLP |
| 4409 Montrose Blvd., Suite 200 | 1301 McKinney, Suite 5100 |
| Houston, Texas 77006 | Houston, Texas 77010-3095 |
| Telephone: (713) 523-0001 | Telephone: (713) 651-5151 |
| Facsimile: (713) 523-1116 | Facsimile:  (713) 651-5246 |
| gkennedy@KennedyHodges.com | Carter.crow@nortonrosefulbright.com |
| | |
| LEAD COUNSEL IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS | ATTORNEY FOR DEFENDANT |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all parties pursuant to the Southern District of Texas ECF on May 23, 2018.

/s/ *Galvin Kennedy*
Galvin Kennedy